```
 1  Philip Cozens SBN# 854051
    LAW OFFICE OF PHILIP COZENS
 2  1007 Seventh Street, Suite 500
    Sacramento, CA  95814
 3
    Telephone:  (916) 443-1504
 4  Fax:  (916) 443-1511

 5  Attorney for Defendant Michael Lee Braun
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:06-CR-0424 EJC |
| Plaintiff, | SENTENCING MEMORANDUM |
| vs. | |
| MICHAEL LEE BRAUN, | |
| Defendant | |

**INTRODUCTION**

Defendant seeks a sentence from the court committing him to probation and a sentence in a county jail.  This is a requested downward departure pursuant to United States Sentencing Guideline 5K2.0(a) in that Defendant suffered from severe depression and as a child, he was physically abused.  Such psychological factors were not adequately taken into consideration by the United States Sentencing Guidelines in this case.  This proposed sentence is different than the recommendation from the Probation Department and undoubtedly different than the recommendation from the government.

Such sentence is just for this case based on the fact that at the time of the offenses, Defendant suffered from severe and untreated at the time mental depression. Such depression caused uncontrolled rages during which Defendant wrote several letters and mailed them. Since his incarceration, Defendant received psychiatric diagnosis of deep chronic depression; received medicine (Wellbutrin) to moderate his depression; and psychiatric counseling to help him cope with his depression. In many ways Defendant is a very different person than the person who committed the crimes. Because of his profound psychological change and adherence to his treatment program, Defendant is not a threat to re-offend. The proposed sentence recognizes his profound psychological change and adherence to his medical treatment.

Further Defendant asks that the court not impose the recommended $10,000.00 because Defendant is unemployed and not likely to find employment as a nuclear engineer and the court must impose restitution an amount approximating $41,000.00. In view of Defendant's restitution, the fine is excessive.

**STATEMENT OF FACTS**

Defendant's statement of facts is a supplement to the Offense Conduct and the Offender Characteristics in the Probation Report.

Defendant admitted that he wrote numerous letters to government and public figures. Defendant included baking soda in the letters. In the letters, the implication was that the white powder was toxic or poison. The letters were mailed as follows:

        March 19, 2005        Letter 13 to the President of the United States

                                       Letter 12 to the Vice-President

        April 11, 2005          Letter 14 to the Vice President

                                       Letter 16 to the President

                                     Letter 17 to Defense Secretary Rumsfeld

|   |   |   |
|---|---|---|
| | August 8, 2005 | Letter 25 to the President |
| | | Letter 26 to the Vice-President |
| | | Letter 27 Defense Secretary Rumsfeld |
| | September 9, 2005 | Letter 28 to the Vice-President |
| | December 1, 2005 | Letter 34 to Mrs. Cheney |
| | | Letter 35 to First Lady Laura Bush |
| | | Letter 36 Defense Secretary Rumsfeld |
| | January 3, 2006 | Letter 38 to the President |
| | March 7, 2006 | Letter 41 to the President |
| | | Letter 40 to Congressman Doolittle |
| | | Letter 42 to Congressman Ose |

The probation report noted that other relevant conduct letters were mailed on the same dates.

As noted in the Probation report, on September 29, 2006, there were several search warrants served at Defendant's house, Defendant's place of work and on Defendant's car. The FBI agents arrested Defendant and transported Defendant to the Sacramento County Jail.

At the Sacramento County Jail, the Sheriff's deputies placed defendant in the psychiatric ward. A jail psychiatrist evaluated Defendant, prescribed wellbutrin and administered the drug to Defendant. When nearing release, the jail psychiatrist strongly recommended that Defendant consult with a psychiatrist regarding Defendant's deep depression.

On his release, and because of one of the conditions of his pre-trial release imposed by the pre-trial release officer Steve Sheehan, Defendant consulted a psychotherapist Meredith Richards. She immediately diagnosed Defendant as alcoholic, suicidal and suffering from deep chronic depression that influenced his major brain functions. Defendant believed that there was no problem and was in denial when consulting with Meredith Richards. At the end of his treatment sessions, Ms. Richards opined that Defendant was not a threat to re-offend. See Meredith Richards' letter dated November 30, 2006 attached to the Declaration of Philip Cozens.

The day after meeting with Meredith Richards, Defendant entered the eight-week intensive out-patient chemical dependency treatment program at Sierra Vista Hospital. Defendant met with the chemical dependency expert Jeff Henigan repeatedly. Defendant completed his intensive out patient program on December 5, 2006. At the end of the treatment sessions, Mr. Henigan sent a letter to Steve Sheehan. In the letter, Henigan opined that Defendant was not a danger to society as long as Defendant worked on his recovery. See Jeff Henigan's letter to Steve Sheehan, dated December 7, 2006 attached to the Declaration of Philip Cozens.

Jeff Henigan referred Defendant to the staff psychiatrist Dr. Shamahan, M.D. at Sierra Vista Hospital. Dr. Shamahan examined Defendant and diagnosed Defendant with chronic deep depression and other psychiatric maladies. Dr. Shamahan ordered constant psychiatric care and counseling. Dr. Shamahan prescribed wellbutrin. Defendant completed that psychiatric care simultaneously with the Sierra Vista chemical dependency treatment program.

Defendant transferred psychiatric treatment from Sierra Vista to a U.C. Davis Medical School psychiatrist on his HMO list. Defendant treated with this psychiatrist for four to five months. At the end of that period, Defendant transferred his treatment to Karl Zeff, M. D. Dr. Zeff prescribed wellbutrin. Dr. Zeff opined that Defendant still has the diagnosed depression but that such depression is in remission.

At the request of Steve Sheehan, the pre-trial services officer, Defendant continued to treat psychologically with Dr. Pena. The records of Defendant's progress with Dr. Pena were forwarded to Steve Sheehan.

After completing the Sierra Vista Hospital intensive out-patient chemical dependency treatment program, Defendant continued with Alcoholics Anonymous meetings three times per week. He has been sober since his arrest in September, 2006. He has hosted meetings at his house with his sponsors.

During his treatment, Defendant realized that Defendant was abused as a child. He knew that he had been beaten and physically struck numerous times. He did not realize that his parents' behavior was not normal parental behavior. Defendant determined that his childhood

was abusive in a physical sense. He reported that his mother and father physically abused him. He reported that his mother was bi-polar and very unpredictable in her behavior. He reported that his father was very physically abusive and demanding.

Defendant met with Dr. Alfred French, M.D. a forensic psychiatrist for testing and diagnosis. Dr French determined that Defendant was physically abused as a child and suffered from depression. While Dr. French has a long report with empirical evidence for his analysis and conclusions, he rather succinctly stated this analysis of Defendant:

> "My summary of the matter is simply that Mr. Braun has done what other victims of severe and ongoing physical abused have done: He has a 'mean streak' and finds some satisfaction in inflicting pain on others. Please note that he has done the most admirable work one can do in life which is to due [sic] [do] the work necessary to sublimate these potentially dangerous feelings into altruism: He became an attorney and pro bono represented tenants who had problems with landlords. It is clear he could have handled his rage (his term) adequately through this sublimated and altruistic channel but for the devastating depression which followed the loss of his daughter as a consequence of which he resorted to the use of alcohol which 'numbs everything' and facilitated a release of his anger in an inappropriate manner
>
> At the present time his depression is being treated with Wellbutrin; he reports that the antidepressant effect of this medication is virtually life-saving. He clearly understands the linkage between his rage, untreated depression, alcohol abuse and his 'game' (to use the FBI investigator's term) which is dangerous. Therefore, it is clear that [for] Mr. Braun the risk to re-offence [sic] [re-offend] is low as long as his recovery and treatment of depression are stable.
>
> **The most important prognostic point here is that he is highly motivated to maintain his recovery apart from the external constraints which are present.**
>
> Therefore, I must conclude that his recovery is stable, that the probability of re-offending is extremely low as long as he maintains his sobriety and continues to take his antidepressant, both of which he is highly motivated to do."

Dr. French and the other forensic psychological professionals opined uniformly that Defendant is not a danger to re-offend and it is not necessary to incarcerate Defendant in order to have him comply with the requirements of the law or the terms of probation.

SENTENCING MEMORANDUM - BRAUN - 5

# LAW AND ARGUMENT

## BECAUSE THE POLICY WRITTEN IN 18 U.S.C. 3553(a) THAT THE COURT OUGHT TO IMPOSE A SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE PURPOSES LISTED IN 18 U.S.C. 3553(a)(2), THE COURT OUGHT TO SENTENCE DEFENDANT TO PROBATION AND A PERIOD OF INCARCERATION IN THE JAIL.

In **18 U.S.C. 3553(a)**, Congress expressed the policy that the trial court in sentencing a criminal defendant, should impose a sentence that is sufficient, but not greater than necessary, to comply with the policies set forth in that code section.

In this case, Dr. French's psychological analysis of Defendant indicates quite strongly that Defendant was suffering from an abusive childhood and from severe depression that is biologically based. It is Dr. French's conclusion that if Defendant maintains his treatment program of wellbutrin, psychiatric counseling and sobriety counseling, that Defendant is a person very unlikely to re-offend. Other treating psychological professionals agree with Dr. French's conclusion.

In Defendant's favor, he has led a long and very productive life prior to this criminal activity. Defendant attended law school and sublimated his rage and anger with volunteer legal work on behalf of tenants, poor clients seeking divorce or child custody and in environmental law.

In **18 U.S.C. 3553(a)(2)**, there are policy concerns for the court in determining a just sentence. Three such concerns are: 1) to reflect the seriousness of the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes by Defendant; and 4 to provide needed educational or vocational training for Defendant. In this case, Defendant's recommended sentence is sufficient for all policy considerations. A probation

commitment with a jail sentence reflects the seriousness of the offense, namely that Defendant authored and sent letters to the President, Vice-President, Secretary of Defense and other leaders with the threat of anthrax and a powder inside the letter to add credence to the written threat and yet recognizes that Defendant has served in the military as an officer with an honorable discharge; served the poor of his community as a pro bono lawyer; and committed the offense because he suffered physical abuse as a child and severe depression as an adult. Such a sentence recognizes and fits into the sentencing consideration the great good Defendant performed as well as the disruption to the government from his actions.

The proposed sentence promotes respect for the law because the sentence is sufficiently long in duration that it is a deterrent to hoax letters through the mail to disrupt government and private industry and individuals. If sentenced as proposed by Defendant, others would know or be able to ascertain that such behavior is sufficiently severely punished that engaging in such behavior is not permitted and justly punished.

One of the major considerations for a sentencing court is to protect the public from a defendant who is likely to re-offend. In this case, Defendant is not likely to re-offend. Dr. French's opinion is that Defendant is not likely to re-offend because Defendant is emotionally and psychically committed to maintaining his health and recovery. Other psychological counselors also believe that Defendant is committed to his rehabilitation and not disposed to commit new crimes. It is worth noting that Defendant's previous life behavior proves that he is normally law-abiding citizen who donates substantial time and money to community causes. His behavior on pre-trial release is consistent with his return to his law-abiding life-style. The aberrant criminal letter writing arose because of the combination of severe untreated depression; separation from his daughter; and extreme use of alcohol that released Defendant's inhibitions.

Defendant now maintains his use of wellbutrin to treat and ameliorate the effects of the depression; he attends Alcoholics Anonymous to prevent a lapse into the use of alcohol. With two of the three causes treated, Defendant is not likely to re-offend.

The last policy consideration is to provide Defendant needed educational or vocational training or correctional treatment in the most efficient manner. In this case all of the psychiatric and psychological treatment was provided by the government, by the Sacramento County Sheriff in providing the psychiatric counseling and recommendations; by Pre-trial Services in the recommendations and referrals by Steve Sheehan to several psychiatrists and counselors; and by Defendant in consultation with Dr. French. Defendant is very well educated with a B.S. degree from the University of Wisconsin in physics and a masters degree. Defendant has law degree from the University of the Pacific. In short he received much of the necessary psychological counsel and requires maintenance on his recovery and is well-educated.

It is clear from the facts in this case that the United States Sentencing Guidelines do not take into account to the extent presented in this case the degree of influence that Defendant's depression and history of child abuse had on Defendant's behavior. The combination of the two IS factors caused a person who was Pro Bono Attorney of the Year in 1995 to threaten the President in the United States in 2005 and 2006. His recovery and treatment returned him to his prior law-abiding lifestyle.

**THE COURT SHOULD NOT IMPOSE THE RECOMMENDED $10,000.00 FINE BECAUSE THE COURT WILL ORDER DEFENDANT TO PAY THE COSTS OF INVESTIGATION AND CLEAN-UP. THE RECOMMENDATION FOR RESTITUTION IS I EXCESS OF $41,000.**

**United States Sentencing Guideline 5E1.2** requires the court to consider several policies stated in body of the Guideline. One of the policy considerations is for the court to consider the amount of the restitution that Defendant will be obligated to pay.

In this case, the amount of the restitution recommended by the probation report is $41,715.39. Although he has some resources, Defendant is unemployed and not likely to find employment because of the limited employment in his field. Defendant asks the court to omit or greatly reduce the amount of the fine.

## CONCLUSION

For the reasons set forth in this memorandum of Points and Authorities, the court ought to sentence Defendant to probation, impose a term less than one year in the county jail and other terms or probation including that Defendant regularly attend AA meetings, maintain his regimen of prescribed medicine and psychological counseling as directed by his probation officer.

Further the court ought to omit or greatly reduce the amount of the fine.

Dated: June 16, 2008                                   Respectfully submitted,

_____
Philip Cozens
Attorney for Defendant
Michael Braun